UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO

CASE NO.:

WINDY LUCIUS,

     Plaintiff,

v.

TOASTED 131, LLC

     Defendant.

                                  /

## **COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiff Windy Lucius ("Plaintiff") hereby sues Defendant Toasted 131, LLC ("Defendant"), a Florida limited liability company, for Injunctive Relief, attorney's fees, litigation expenses and costs pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36, *et seq*.

1.     Venue lies in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 1.04, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

2.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See* also

28 U.S.C. § 2201 and § 2202.

3.      Plaintiff is a Florida resident, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA. Plaintiff is legally blind and a member of a protected class under the ADA 42 U.S.C. §12102(1) & (2), the regulations implementing the ADA as set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Plaintiff is substantially limited in the major life activity of seeing. Plaintiff's disability is defined in 28 C.F.R. §36.105(b)(2).

4.      Plaintiff uses the internet and a mobile device to help her navigate a world of goods, products and services like sighted individuals. The internet, websites and mobile applications provide her a window into the world that she would not otherwise have. She brings this action against Defendant for offering and maintaining a mobile website (software that is intended to run on mobile devises such as phones or tablet computers) that is not fully accessible and independently usable by visually impaired consumers. Plaintiff utilizes the Apple Screen Reader VoiceOver software to read computer materials and/or access and comprehend internet mobile website information which is specifically designed for the visually impaired.

5.      Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting her civil rights. As such, she monitors mobile websites to ensure and determine whether places of public

accommodation and/or their mobile websites are in compliance with the ADA.

6.     Defendant owns and operates a place of public accommodation which is a fast casual restaurant branded as "Toasted." The Toasted restaurant is located within Orange county at 1945 Aloma Avenue, Winter Park, Florida 32792 and is open to the public. As such, it is a Place of Public Accommodation subject to the requirements of Title III of the ADA and its implementing regulation as defined by 42 U.S.C. §12181(7)(B), §12182, and 28 C.F.R. §36.104(2). The Toasted restaurant is also referenced throughout as "place of public accommodation," "Toasted Winter Park restaurant," or "restaurant."

7.     Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] restaurant, bar, or other establishment serving food or drink," 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104(2).

8.     Subsequent    to    the    effective    date    of    the    ADA,    the https://www.igettoasted.com mobile website ("mobile website") was constructed for the general public to access on their mobile devices (phones, tablets) information for patronizing "Toasted" brand restaurants. The https://www.igettoasted.com mobile website supports three "Toasted" brand restaurants which are as follows:

a) Toasted at 1945 Aloma Avenue, Winter Park, Florida 32792 (owned by the Defendant);

b) Toasted at 6506 Old Brick Road Building A, Windermere, Florida 34786 (owned by As Gouda 131, LLC); and

c) Toasted at 11511 University Boulevard, Orlando Florida 32817 (owned by Fig and Goat 131, LLC).

9.      The https://www.igettoasted.com mobile website supports, is an extension of, is in conjunction with, and is complementary and supplemental to Defendant's Toasted Winter Park restaurant. The mobile website delineates the goods, services, accommodations, privileges, benefits and facilities available to patrons at the Toasted Winter Park restaurant physical location.

10.     The https://www.igettoasted.com mobile website provides a link to Defendant's Toasted Winter Park restaurant as a way for the public to become familiar with the restaurant location, the Toasted menu selections, hours of operation, restaurant location, and provides other information Defendant seeks to communicate to the public. The public can also inquire about Toasted catering services, as Toasted Winter Park offers a toasted Food Truck for catering services (boxed lunches and grilled cheese bar). The mobile website also enables the public/patrons to place an order online and have the order ready for pick up at the restaurant or have that food delivered to one's home. The mobile website also links to the Toasted Twitter, Facebook, Instagram, Foursquare and Yelp pages. By the provision of menu selection, catering, and to-go and delivery online ordering, the

mobile website is an integral part of the goods and services offered by Defendant. By this nexus, the mobile website is characterized as a Place of Public Accommodation subject to Title III of the ADA[1], 42 U.S.C. § 12181(7)(B) and  28 C.F.R. §36.104(2).

11.     The mobile website allows mobile device users to use a mobile platform through a connection to Wi-Fi or cellular data so that users can manage their dining choice from their mobile device.  Defendant has subjected itself to the ADA because the https://www.igettoasted.com mobile website is offered as a tool to promote, advertise and sell its Toasted Winter Park products and services from its brick-and-mortar restaurant location which is a place of public accommodation. As a result, the mobile website must interact with its restaurant and the public, and in doing so must comply with the ADA, which means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the goods and services afforded to the general public.[2]

---

[1] Ensuring Web Accessibility for people with disabilities has become a priority for the Department of Justice.  The Department of Justice Civil Rights Division has taken the position that both State and local government websites (Title II) and the websites of private entities that are public accommodations (Title III) are covered by the ADA. On March 18, 2022, the DOJ issued guidance on Web Accessibility, see https://beta.ada.gov/resources/web-guidance/.  The guidance states that individuals with disabilities should not be denied equal access to information, and inaccessible websites are as excluding as are access barriers to physical locations. DOJ guidance requires that website barriers must be identified, prevented, and removed so that all Title II and Title III entities offer websites that are accessible to people with disabilities.

[2] According to Statista, almost half of web traffic in the United States originated form mobile devices in 2021. Therefore, Defendant knew or should have known that potential customers would be using the mobile version of its website and provided accessibility for blind users.

12.     The mobile website does not properly interact with VoiceOver screen reader software technology in a manner that allows blind and visually impaired individuals to comprehend the mobile website and does not provide other means to accommodate blind and visually impaired individuals.

13.     Like the seeing community, Plaintiff would like the opportunity to be able to use the https://www.igettoasted.com mobile website to test for the ability to comprehend the Toasted Winter Park menu selections, to test for the ability to book catering services and to test for the ability to order food for pickup or delivery online. However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not reoccur, Plaintiff will continue to be denied full and equal access to the mobile website and will be deterred from fully using that mobile website.

14.     Plaintiff is continuously aware of the violations on the https://www.igettoasted.com mobile website and is aware that it would be a futile gesture to attempt to utilize the mobile website as long as those violations exist unless she is willing to suffer additional discrimination.

15.     Defendant and alike restaurants are fully aware of the need to provide full access to all visitors to its mobile website as such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low vision individuals from the rest

of society.

16.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this action is her only means to secure adequate redress from Defendant's discriminatory practice.

17.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiff is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

18.     Plaintiff has been obligated to retain the civil rights law office of J. Courtney Cunningham, PLLC and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred. Plaintiff is entitled to recover those attorney's fees, costs and expenses from Defendant pursuant to 42 U.S.C. §12205 and 28 CFR §36.505.

## COUNT I – VIOLATIONS OF TITLE III OF THE ADA

19.     The ADA requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective, which includes the provision of auxiliary aids and services for such purpose.

20.     According to 28 C.F.R. Section 36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R. Section 36.303(b)(2) specifically states that (VoiceOver) screen reader software is an effective method of making visually delivered material

available to individuals who are blind or have low vision.

21.     28 C.F.R. Section 36.303(c)(1)(ii) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability."

22.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

23.     The https://www.igettoasted.com mobile website has been designed to integrate with Defendant's Toasted Winter Park restaurant through the provision of a catering inquiry page and the ability to order food online for delivery or for pick up at the Winter Park restaurant location. By and through the mobile website, Defendant extends its restaurant into individual persons' homes and portable devices wherever located. The mobile website is a service, facility, privilege, advantage, benefit and accommodation of Defendant's restaurant and as such, is integrated with, and is a nexus to, its brick-and-mortar restaurant location. Therefore, it is governed

by the following provisions:

     a.    U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

     b.    42 U.S.C. Section 12182(b)(1)(A)(i) provides: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[.]"

     c.    42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]"

     d.    42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to provide an individual or class of individuals, on the basis of a

disability or disabilities of such individual or class, directly, or through contractual,

licensing, or other arrangements with a good, service, facility, privilege, advantage,

or accommodation that is different or separate from that provided to other

individuals, unless such action is necessary to provide the individual or class of

individuals with a good, service, facility, privilege, advantage, or accommodation,

or other opportunity that is as effective as that provided to others[.]"

     e.     42 U.S.C. Section 12182(b)(1)(B) provides: "Goods, services,

facilities, privileges, advantages, and accommodations shall be afforded to an

individual with a disability in the most integrated setting appropriate to the needs of

the individual."

     f.     42 U.S.C. Section 12182(b)(1)(C) provides: "Notwithstanding

the existence of separate or different programs or activities provided in accordance

with this section, an individual with a disability shall not be denied the opportunity

to participate in such programs or activities that are not separate or different."

     g.     42 U.S.C. Section 12182(b)(2)(ii) describes as discrimination: "a

failure to make reasonable modifications in policies, practices, or procedures, when

such modifications are necessary to afford such goods, services, facilities, privileges,

advantages, or accommodations to individuals with disabilities, unless the entity can

demonstrate that making such modifications would fundamentally alter the nature

of such goods, services, facilities, privileges, advantages, or accommodations[.]"

h. 42 U.S.C. Section 12182(b)(2)(iii) describes as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]"

24. Plaintiff attempted to access and test the https://www.igettoasted.com mobile website, but was unable to do so. Plaintiff continues to be unable to enjoy full and equal access to the mobile website and/or understand the content therein because numerous portions of the mobile website do not interface with mobile VoiceOver screen reader software. Specifically, features of the mobile website that are inaccessible to VoiceOver screen reader software users include, but are not limited to, the following (citing the WCAG 2.1 Level A and AA Guidelines):

i. Guideline 1.1.1 Non-Text Content is violated. Text alternatives for non-text content should be provided, and this is not the case. The first five items announced on this mobile webpage are the unlabeled social media icons. For example, instead of hearing "Facebook," a long string of numbers is announced which immediately creates confusion for mobile VoiceOver screen reader software users since these first elements are not labeled.

ii. Guideline 1.3.1 Info and Relationships is violated. Accessibility issues are present in the *Dietary Chart* PDF. The *Dietary Chart* PDF is setup as a table, but the content is not accessible. For example, for the "Viva La Vegan burger," the first allergen is listed as Gluten, but this allergen is not announced. Instead of hearing "Gluten," mobile VoiceOver screen reader

11

software users  hear "new line column 2 image." Mobile VoiceOver screen reader software users are not able to understand which allergens are present in each food type because the content is not announced nor are the header or row labels announced for each cell.

iii.   Guideline 2.4.3 Focus order is violated. The mobile website is required to provide focus in a logical order, and this has been violated. When a mobile VoiceOver screen reader software user presses the *Locations* button at the top of the homepage, the page auto-scrolls to the list of Toasted locations. However, when a mobile VoiceOver screen reader software user presses the *Locations* button, focus moves to the top of the page and announces the unlabeled Facebook icon, so mobile VoiceOver screen reader software users do not hear the Toasted restaurant locations which are displayed to the sighted user. Mobile VoiceOver screen reader software users must navigate from the top of the page (again) in order to search for the list of locations.

iv.   Guideline 2.4.4 Link purpose (in context) is violated. The *Toasted* graphic logo at the top of the homepage is announced only as "slash visited link image" so mobile VoiceOver screen reader software users are not clear as to the purpose of this link.

v.   Guideline 2.4.6 Headings and Labels is violated. The buttons in the *ordering process* modal (the first step of the ordering process) are not labeled. Both the *Pickup* and *Delivery* buttons are announced as just text, so mobile VoiceOver screen reader software users are not aware that these buttons are interactive elements, and that they must select either the *Pickup* or the *Delivery* button in order to start the ordering process.

vi.   Guideline 4.1.2 Name, Role, Value is violated. All elements must be built for accessibility and this is not the case. Multiple buttons shown during the ordering process are not labeled. For example, each option for the "Smokehouse grilled cheese" menu selection is listed as a checkbox, but the checkboxes are not announced.

vii.   Guideline 4.1.3 Status Messages is violated.  If a status message is presented and focus is not set to that message then the message must be announced to mobile VoiceOver screen reader software users, and this is not the case.  After a mobile VoiceOver screen reader software user selects a checkbox during the online ordering process, the checkbox shows a checkmark and the total amount shown in the *Add to Cart* button is updated, but neither is announced.

Mobile VoiceOver screen reader software users do not hear that the option was selected, nor do they hear that the item was added to their cart and that the total cart amount has been updated

25.     In this instant case, Defendant's mobile website online ordering system is linked to a third party vendor (www.toasttab.com). The fact that a portion of the WCAG 2.1 Level A and AA Guideline violations may be related to the third party vendor's platform does not absolve Defendant of culpability.  Because restaurants are places of public accommodation, their operators are subject to the requirements of Title III as well. 42 U.S.C. § 12181(7)(b). Those requirements include a prohibition against subjecting patrons with disabilities to discrimination "through contractual, licensing, or other arrangements," such as use of third party vendors' inaccessible platforms for making reservations (or ordering food). 42 U.S.C. § 12182(b)(1)(A); *See Kohler v Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264-66 (9th Cir. 2015) (Pre-existing obligations under Title III of the ADA may not be avoided through contractual arrangements, and those obligations remain even where compliance is under control of another party); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, *4 (C.D. Cal. January 24, 2018) (restaurant operators are liable for website and mobile app accessibility where there is a nexus to the restaurants themselves).  Compliance with the ADA is a nondelegable duty which cannot be skirted by third party contractual relationships.

26.     As the owner, operator, and/or beneficiary of the Toasted restaurant

mobile website, Defendant is required to comply with the ADA and the provisions cited above. This includes Defendant's obligation to create, maintain, and be a beneficiary of a mobile website that is accessible to and usable by visually impaired persons so that they can enjoy full and equal access to the mobile website and the content therein, including the ability to order food online for pick up at the restaurant or delivery to their homes as well as to inquire about catering services using Toasted's food truck.

27.     With respect to the mobile website, Defendant has violated the ADA by failing to insure that the mobile website which is integrated with its Toasted Winter Park restaurant with VoiceOver screen reader software utilized by visually impaired individuals (as specifically delineated within paragraph 24) either directly or through contractual, licensing or other arrangements. Defendant's violations have resulted in Defendant denying Plaintiff accommodation on the basis of her disability:

a.      by depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42 U.S.C. § 12182(a));

b.      in the denial of providing Plaintiff the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

c.      in failing to afford Plaintiff the opportunity to participate in or

14

benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

d.      by providing Plaintiff a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals (unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

e.      by failing to afford Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the disabled individual (42 U.S.C. § 12182(b)(1)(B));

f.      notwithstanding the existence of separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

g.      by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges,

15

advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

h.      by a failure to take such steps as may be necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. § 12182(b)(2)(iii)).

28.    Plaintiff is continuously aware of the violations within Defendant's mobile website and is aware that it would be a futile gesture to attempt to utilize and/or test the mobile website as long as those violations exist unless she is willing to suffer additional discrimination.

29.    Plaintiff is well aware that the ADA requires effective communications. However, long after the required date of compliance, many public accommodations refuse to comply leaving Plaintiff feeling excluded and rejected because she is disabled.  As a result, Plaintiff has suffered (and continues to suffer) frustration and humiliation as the result of the discriminatory conditions present within Defendant's mobile website. By continuing to operate its mobile website with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities,

privileges and/or accommodations available to the general public. By encountering the discriminatory conditions within Defendant's mobile website and knowing that it would be a futile gesture to attempt to utilize the mobile website unless she is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the general public and is deterred and discouraged from doing so. By maintaining a mobile website with violations, Defendant deprives Plaintiff the equality of opportunity offered to the general public.

30.    Plaintiff has suffered (and will continue to suffer) direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA and conform its mobile website to WCAG 2.1 Level A and AA Guidelines.

31.    Plaintiff has a realistic, credible, existing and continuing threat of discrimination from Defendant's non-compliance with the ADA with respect to its mobile website. Plaintiff has reasonable grounds to believe that she will continue to be subjected to discrimination in violation of the ADA by Defendant when she visits the mobile website to test for compliance with the ADA. Plaintiff desires to access the mobile website to assure herself that the mobile website is in compliance with the ADA so that she and others similarly situated will have full and equal enjoyment of the mobile website without fear of discrimination.

32.     Plaintiff is without adequate remedy at law and has suffered (and will continue to suffer) irreparable harm. The Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief as requested herein.

33.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require Defendant to alter its mobile website to make it readily accessible to and usable by Plaintiff and other persons with vision impairments.

**WHEREFORE,** Plaintiff Windy Lucius hereby demands judgment against Defendant Toasted 131, LLC and requests the following injunctive and declaratory relief:

a.     The Court issue a Declaratory Judgment that determines that the https://www.igettoasted.com mobile website is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*;

b.     The Court issue a Declaratory Judgment that Defendant has violated the ADA by failing to monitor and maintain the mobile website to ensure that it is readily accessible to and usable by persons with vision impairment;

c.     The Court issue an Order directing Defendant to alter the mobile website to make it accessible to, and useable by, individuals with

disabilities to the full extent required by Title III of the ADA;

d.      The Court issue an Order directing Defendant provide the appropriate

auxiliary aids such that individuals with visual impairments will be able

to effectively communicate with the https://www.igettoasted.com

mobile website for purposes of comprehending the Toasted Winter

Park restaurant menu selections, inquiring about catering services, and

ordering food for pick-up or for delivery and during that time period

prior to the mobile website's being designed to permit individuals with

visual impairments to effectively communicate, requiring Defendant to

provide an alternative method for individuals with visual impairments

to effectively communicate so that disabled individuals are not impeded

from obtaining the goods and services made available to the public

through that mobile website.

e.      The Court enter an Order directing Defendant to evaluate and neutralize

its policies and procedures towards persons with disabilities for such

reasonable time so as to allow Defendant to undertake and complete

corrective procedures;

f.      The Court enter an Order directing Defendant to continually update and

maintain the mobile website to ensure that it remains fully accessible to

and usable by visually impaired individuals;

g.      The Court award attorney's fees, costs and litigation expenses pursuant

to 42 U.S.C. § 12205; and,

h.      The Court provide such other relief as the Court deems just and proper,

and/or is allowable under Title III of the Americans with Disabilities

Act.

Dated:  July 14, 2022

Respectfully submitted,

*/s/ J. Courtney Cunningham*
J. Courtney Cunningham, Esq.
J. COURTNEY CUNNINGHAM, PLLC
FBN: 628166
8950 SW 74th Court, Suite 2201
Miami, Florida 33156
Telephone:  305-351-2014
Email: cc@cunninghampllc.com
*Counsel for Plaintiff*